UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.:

AIN JEEM, INC.,

      Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A,"

      Defendants.

_____/

## COMPLAINT

Plaintiff AIN JEEM, INC. ("Ain Jeem" or "Plaintiff"), by and through undersigned

counsel, hereby sues Defendants, the Individuals, Partnerships, and Unincorporated

Associations identified in the caption, which are set forth on Schedule "A" hereto

(collectively, the "Defendants"), and alleges as follows:

### NATURE OF THE ACTION

1.      Defendants are promoting, selling, offering for sale, and distributing goods

using counterfeits and confusingly similar imitations of Ain Jeem's trademarks within this

district through various Internet based e-commerce stores and fully interactive commercial

Internet websites operating under the seller identification names and domain names set

forth on Schedule "A" hereto (the "Seller IDs and Subject Domain Names").

2.      Like many other famous trademark owners, Plaintiff suffers ongoing daily

and sustained violations of its trademark rights at the hands of counterfeiters and infringers,

such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiff's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiff's trademarks, as well as the destruction of the legitimate market sector in which it operates.

3.     In order to combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, Plaintiff has expended significant amounts of resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement. The exponential growth of counterfeiting over the Internet, particularly through online marketplace platforms, has created an environment that requires companies, such as Plaintiff, to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the negative effects of confusion and the erosion of the goodwill connected to Plaintiff's brand.

## JURISDICTION AND VENUE

4.     This is an action seeking damages and injunctive relief for trademark counterfeiting and infringement, false designation of origin under the Lanham Act, common law unfair competition; common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1121, 1125(a), and 1125(d), and The All Writs Act, 28 U.S.C. § 1651(a); 15 U.S.C. § 1051 *et seq*.

5.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. §§ 1114 and 1125(a), 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

6. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims, because the claims are so related to the trademark claims in this action, over which this Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution.

7. Defendants are subject to personal jurisdiction in this District because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this District through at least the Internet based e-commerce stores and fully interactive commercial Internet websites accessible in Florida and operating under the Seller IDs and Subject Domain Names. Upon information and belief, Defendants infringe Plaintiff's trademarks in this District by advertising, using, selling, promoting and distributing counterfeit trademark goods through such Internet based e-commerce stores and fully interactive commercial Internet websites.

8. Venue is proper in this District pursuant 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens engaged in infringing activities and causing harm within this District by advertising, offering to sell, selling and/or shipping infringing products into this District. Defendants may be found in this District, as they are subject to personal jurisdiction herein.

**THE PLAINTIFF**

9. Plaintiff Ain Jeem, Inc. is a Delaware corporation with a principal place of business located in Newport Beach, California.

10. Ain Jeem is an international licensing company which specializes in worldwide distribution of content, consumer products rights, and brand management. Ain

Jeem is the owner of all rights, title, and interest in the mark "Kareem Abdul-Jabbar" and the following "KAR33M Logo" (collectively, the "Kareem Abdul-Jabbar Marks"):

**KAR33M**

11.     The Kareem Abdul-Jabbar Marks are associated with Kareem Abdul-Jabbar, an American former collegiate and professional basketball player who played twenty seasons in the National Basketball Association ("NBA") for the Milwaukee Bucks and the Los Angeles Lakers, and dominated the game in the 1970s and early '80s.

12.     During his career as a center, Kareem Abdul-Jabbar was a record six-time NBA Most Valuable Player ("MVP"), a record 19-time NBA All-Star, a 15-time All-NBA selection, and an 11-time NBA All-Defensive Team member.  A member of six NBA championship teams as a player and two more as an assistant coach, Kareem Abdul-Jabbar twice was voted NBA Finals MVP. In 1996, he was honored as one of the 50 Greatest Players in NBA History.

13.     After winning 71 consecutive basketball games on his high school team in New York City, Kareem Abdul-Jabbar was recruited by UCLA, where he played on three consecutive national championship teams and was a record three-time MVP of the NCAA Tournament. Drafted with the first overall pick by the Milwaukee Bucks franchise in the 1969 NBA draft, Kareem Abdul-Jabbar spent six seasons in Milwaukee.  After leading the Bucks to its first NBA championship at age 24 in 1971, using his famous "skyhook" shot, he established himself as one of the league's top scorers.

14.     In 1975, he was traded to the Lakers, with whom he played the final 14 seasons of his career and won five additional NBA championships.  Over his 20-year NBA career, his teams succeeded in making the playoffs 18 times and got past the first round 14 times; his teams reached the NBA Finals on 10 occasions.

15.     In 1984 he surpassed Wilt Chamberlain's career scoring total of 31,419 points.  At the time of his retirement at age 42 in 1989, Kareem Abdul-Jabbar was the NBA's all-time leader in points scored (38,387), games played (1,560), minutes played (57,446), field goals made (15,837), field goal attempts (28,307), blocked shots (3,189), defensive rebounds (9,394), career wins (1,074), and personal fouls (4,657). He remains the all-time leader in points scored, field goals made, and career wins.  He is ranked third all-time in both rebounds and blocked shots.  In 2007, he was inducted into the National Collegiate Basketball Hall of Fame and was voted the greatest center of all time by ESPN.  In 2008, ESPN named him the "greatest player in college basketball history," and in 2016, they named him the second-best player in NBA history.

16.     Kareem Abdul-Jabbar is a global icon that changed the game of professional basketball.  Since his stellar professional career both as a player and basketball coach, he has gone on to become a celebrated New York Times-bestselling author, actor, filmmaker, ambassador of education, and Time Magazine columnist.  In 2012, Kareem Abdul-Jabbar was selected by Secretary of State Hillary Clinton to be a U.S. global cultural ambassador. In 2016, President Barack Obama awarded him the Presidential Medal of Freedom.  After 50 years as an athlete and activist, he offers his perspectives as a nationally recognized speaker who regularly appears on the lecture circuit.  Kareem Abdul-Jabbar has twice been

named Columnist of the Year (in 2017 and 2018) by the Southern California Journalism Awards.

17.     Goods bearing and reproducing the Kareem Abdul-Jabbar Mark are sold through authorized retailers throughout the United States, including within the State of Florida and this District.

18.     Genuine and authorized products bearing and reproducing the Kareem Abdul-Jabbar Mark are widely legitimately advertised, promoted, and distributed by and through Ain Jeem and its authorized partners, including but not limited to the "KAR33M Official Store" at www.shop.kareemabduljabbar.com.  Over the course of the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing, has become increasingly important to Ain Jeem's overall marketing and consumer education efforts.  Thus, Ain Jeem expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.  Those strategies allow Ain Jeem and its authorized partners to educate consumers fairly and legitimately about the value associated with the Kareem Abdul-Jabbar brand.

## THE DEFENDANTS

19.     Defendants are individuals and/or business entities of unknown makeup, the majority of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, or redistribute products from the same or similar sources in those locations and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those

locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).  Defendants target their business activities towards consumers throughout the United States, including within this district through the operation of Internet based e-commerce stores via Internet marketplace websites under the Seller IDs and Subject Domain Names.

20.    With respect to those Defendants that do not reside and/or operate in foreign jurisdictions, all of these domestic Defendants conduct business in the State of Florida.  All domestic Defendants that are non-residents of the State of Florida availed themselves of the privilege extended by law to non-residents and others to operate, conduct, engage in, or carry on a business or business venture in the State of Florida, or to have an office or agency in Florida.  Based on the foregoing, it is appropriate in this matter for all domestic Defendants that are non-residents of the State of Florida to be served with process through substitute service on the Secretary of State of Florida pursuant to Fla. Stat. §§ 48.161 and 48.181.

21.    Defendants are the past and present controlling forces behind the sale of products under counterfeits and infringements of Plaintiff's trademarks as described herein using at least the Seller IDs and Subject Domain Names.

22.    Upon information and belief, Defendants directly engage in unfair competition by advertising, offering for sale, and selling goods bearing one or more of Plaintiff's trademarks to consumers within the United States and this District through Internet based e-commerce stores using, at least, the Seller IDs and Subject Domain Names and additional seller identification aliases and domain names not yet known to Plaintiff.

Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

23.     Defendants have registered, established or purchased, and maintained their Seller IDs and Subject Domain Names.  Upon information and belief, Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs and Subject Domain Names.

24.     Upon information and belief, some Defendants have registered and/or maintained their Seller IDs and Subject Domain Names for the sole purpose of engaging in illegal counterfeiting activities.

25.     Upon information and belief, Defendants will continue to register or acquire new seller identification aliases and domain names for the purpose of selling and offering for sale goods bearing counterfeit and confusingly similar imitations and unauthorized reproductions or derivative works of one or more of Plaintiff's trademarks unless preliminarily and permanently enjoined.

26.     Defendants use their Internet-based businesses in order to infringe the intellectual property rights of Plaintiff.

27.     Defendants' business names, *i.e.*, the Seller IDs and Subject Domain Names, associated payment accounts, and any other alias seller identification aliases and domain names used in connection with the sale of counterfeit and infringing goods bearing one or more of Plaintiff's trademarks are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and

infringement scheme and cause harm to Plaintiff.  Moreover, Defendants are using Plaintiff's famous trademarks to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs and Subject Domain Names, thereby increasing the value of the Seller IDs and Subject Domain Names and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

### GENERAL FACTUAL ALLEGATIONS

### *Ain Jeem's Intellectual Property Rights*

28.    Plaintiff is the owner of the following trademark, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Kareem Abdul-Jabbar Standard Character Mark"):

| Trademark | Registration Number | Registration Date | First Use Date | Class / Goods |
|---|---|---|---|---|
| Kareem Abdul-Jabbar | 2,074,575 | 06/24/1997 | 01/25/1990 | IC 025: athletic and athletically inspired clothing in the nature of T-shirts, and socks |

The foregoing registration for the Kareem Abdul-Jabbar Standard Character Mark constitutes presumptive evidence of its ownership and validity.  A true and correct copy of the federal registration for the Kareem Abdul-Jabbar Mark is attached hereto as **Exhibit 1.**

28.    Plaintiff is also the owner of the following logo:



(the "KAR33M Logo").  Collectively the Kareem Abdul-Jabbar Standard Character Mark and KAR33M Logo are referred to herein as the "Kareem Abdul-Jabbar Marks.

29.     The Kareem Abdul-Jabbar Marks are used in connection with the design, marketing, and distribution of high-quality goods in at least the category identified above.

30.     Long before Defendants began their infringing activities complained of herein, the Kareem Abdul-Jabbar Marks have been used by Plaintiff in interstate commerce to identify and distinguish Mr. Kareem Abdul-Jabbar's career and associated merchandise for an extended period.

31.     The Kareem Abdul-Jabbar Marks are well-known and famous and have been for many years.  Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the Kareem Abdul-Jabbar Marks and products bearing the Kareem Abdul-Jabbar Marks.  The Kareem Abdul-Jabbar Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

32.     Plaintiff has extensively used, advertised, and promoted the Kareem Abdul-Jabbar Marks in the United States in association with its merchandise.

33.     As a result of Plaintiff's efforts, members of the consuming public readily identify products and merchandise bearing or sold under the Kareem Abdul-Jabbar Marks as being high quality goods sponsored and approved by Plaintiff.

34.     The Kareem Abdul-Jabbar Marks serve as a symbol of Plaintiff's quality, reputation, and goodwill and have never been abandoned.

*Defendants' Counterfeiting and Infringing Conduct*

35.     Upon information and belief, Defendants are promoting and advertising, distributing, selling, and/or offering for sale counterfeit and infringing goods in interstate commerce using exact copies and confusingly similar copies of the Kareem Abdul-Jabbar Marks through at least the Internet based e-commerce stores operating under the Seller IDs and Subject Domain Names (collectively, the "Counterfeit Goods").  Plaintiff has used the Kareem Abdul-Jabbar Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiff's merchandise.

36.     Upon information and belief, Defendants' Counterfeit Goods are of a quality substantially and materially different than that of Plaintiff's genuine goods. Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high quality goods offered for sale by Plaintiff under the Kareem Abdul-Jabbar Marks despite Defendants' knowledge that they are without authority to use the Kareem Abdul-Jabbar Marks.  The effect of Defendants' actions will cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, or approved by Plaintiff.

37.     Defendants advertise their Counterfeit Goods for sale to the consuming public via e-commerce stores on Internet marketplace websites using at least the Seller IDs

and Subject Domain Names.  In so advertising these goods, Defendants improperly and unlawfully use the Kareem Abdul-Jabbar Marks without Plaintiff's permission.

38.     As part of their overall infringement and counterfeiting scheme, Defendants are, upon information and belief, employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of the Kareem Abdul-Jabbar Marks.  Specifically, Defendants are using counterfeits and infringements of Plaintiff's famous Kareem Abdul-Jabbar Marks in order to make their e-commerce stores and websites selling illegal goods appear more relevant, authentic, and attractive to consumers searching for Plaintiff's related goods and information online.  By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods.  Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the goodwill associated with the Kareem Abdul-Jabbar Marks, and/or (iii) increasing Plaintiff's overall cost to market the Kareem Abdul-Jabbar Marks and educate consumers about its brand via the Internet.

39.     Upon information and belief, Defendants are concurrently targeting their counterfeiting and infringing activities toward consumers and causing harm within this District and elsewhere throughout the United States.  As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

40.     Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the Kareem Abdul-Jabbar Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

41.     Defendants' use of the Kareem Abdul-Jabbar Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

42.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation.   If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

43.     Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Counterfeit Goods, which there is not.

44.     Upon information and belief, Defendants' payment and financial accounts are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to

their Seller IDs and Subject Domain Names and any other seller identification aliases and domain names being used and/or controlled by them.

45.     Further, upon information and belief, Defendants are likely to transfer or conceal their assets to avoid payment of any monetary judgment awarded to Plaintiff.

46.     Plaintiff has no adequate remedy at law.

47.     Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and wrongful use of the Kareem Abdul-Jabbar Marks.

48.     The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

## COUNT I -- TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

49.     Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 48 as though fully set forth herein.

50.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the Kareem Abdul-Jabbar Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale of the Counterfeit Goods.

51.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods, using counterfeits and/or infringements of the Kareem Abdul-Jabbar Marks.  Defendants are continuously infringing and inducing others to infringe the

Kareem Abdul-Jabbar Marks by using one or more of them to advertise, promote, offer to sell, and/or sell at least counterfeit and infringing goods.

52.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

53.     Defendants' unlawful actions have individually and jointly caused and are continuing to cause unquantifiable damage to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

54.     Defendants' above-described illegal actions constitute counterfeiting and infringement of the Kareem Abdul-Jabbar Marks in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

55.     Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined.  Additionally, Defendants will continue to wrongfully profit from their illegal activities.

**COUNT II -- FALSE DESIGNATION OF ORIGIN
PURSUANT TO § 43(A) OF THE LANHAM ACT (15 U.S.C. § 1125(a))**

56.     Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 48 as though fully set forth herein.

57.     Upon information and belief, Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of the Kareem Abdul-Jabbar Marks have been widely advertised and offered for sale throughout the United States via the Internet.

58. Defendants' Counterfeit Goods bearing, offered for sale, and sold under copies of the Kareem Abdul-Jabbar Marks are virtually identical in appearance to Plaintiff's genuine goods. However, Defendants' Counterfeit Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

59. Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

60. Defendants have authorized infringing uses of the Kareem Abdul-Jabbar Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

61. Additionally, Defendants are using counterfeits and infringements of the Kareem Abdul-Jabbar Marks in order to unfairly compete with Plaintiff and others for space within search engine organic results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the World Wide Web.

62.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

63.     Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

### COUNT III -- COMMON LAW UNFAIR COMPETITION

64.     Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 48 as though fully set forth herein.

65.     This is an action against Defendants based on their promotion, advertisement, distribution, sale, and/or offering for sale of goods using marks which are virtually identical, both visually and phonetically, to the Kareem Abdul-Jabbar Marks in violation of Florida's common law of unfair competition.

66.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods bearing counterfeits and infringements of the Kareem Abdul-Jabbar Marks.  Defendants are also using counterfeits and infringements of the Kareem Abdul-Jabbar Marks to unfairly compete with Plaintiff for (i) space in search engine results across an array of search terms and/or (ii) visibility on the World Wide Web.

67.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming

public as to the origin and quality of Defendants' products by their use of the Kareem Abdul-Jabbar Marks.

68.     Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

### COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

69.     Plaintiff hereby adopts and re-alleges the allegations set forth in paragraphs 1 through 48 as though fully set forth herein.

70.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing one or more of the Kareem Abdul-Jabbar Marks.  Plaintiff is the owner of all common law rights in and to the Kareem Abdul-Jabbar Marks.

71.     Specifically, Defendants, upon information and belief, are promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements of the Kareem Abdul-Jabbar Marks.

72.     Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and general consuming public as to the origin and quality of Defendants' Counterfeit Goods bearing the Kareem Abdul-Jabbar Marks.

73.     Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

A.      Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502(a), and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the Kareem Abdul-Jabbar Marks; from using the Kareem Abdul-Jabbar Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or products of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Plaintiff; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine

optimization strategies using colorable imitations of Plaintiff's Kareem Abdul-Jabbar Marks; and from otherwise unfairly competing with Plaintiff.

B.      Entry of an order pursuant to 28 U.S.C §1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiff's request, the top level domain (TLD) Registry for each of the Subject Domain Names or their administrators, including backend registry operators or administrators, place the Subject Domain Names, and any other domains names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the Kareem Abdul-Jabbar Marks, on Registry Hold status for the remainder of the registration period for any such domain name, thus removing them from the TLD zone files which link the Subject Domain Names, and any other domain names used by Defendants, to the IP addresses where the associated websites are hosted.

C.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, canceling for the life of the current registration or, at Plaintiff's election, transferring the Subject Domain Names and any other domain names used by Defendants to engage in their counterfeiting of the Kareem Abdul-Jabbar Marks at issue to Plaintiff's control so they may no longer be used for illegal purposes.

D.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court disable and/or cease facilitating access to the Seller IDs, and any other seller identification aliases and domain names being

20

used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the Kareem Abdul-Jabbar Marks.

E.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by the Court, identify any e-mail address known to be associated with Defendants' respective Seller ID.

F.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by the Court permanently remove any and all listings and associated images of goods bearing counterfeits and/or infringements of the Kareem Abdul-Jabbar Marks via the e-commerce stores operating under the Seller IDs, and upon Plaintiff's request, any other listings and images of goods bearing counterfeits and/or infringements of the Kareem Abdul-Jabbar Marks associated with and/or linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of the Kareem Abdul-Jabbar Marks.

G.      Entry of an order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided

for under 15 U.S.C. §1117, or, at Plaintiff's election with respect to Count I, that Plaintiff be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

H.      Entry of an order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs and Subject Domain Names or other seller identification aliases or e-commerce store names, domain names and/or websites used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

I.      Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiff's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

J.      Entry of an order requiring Defendants to pay prejudgment interest according to law.

K.      Entry of an order for such other and further relief as the Court may deem proper and just.

Date:   May 5, 2021               Respectfully submitted by,

THE BRICKELL IP GROUP, PLLC
1101 Brickell Avenue
South Tower, Suite 800
Miami FL, 33131
Tel: 305-728-8831
Fax: 305-428-2450

*/s/ Richard Guerra*
Richard Guerra, Trial Counsel
Fla. Bar No. 689521
Email: rguerra@brickellip.com
Rafael Perez-Pineiro
Fla. Bar No. 543101
Email: rperez@brickellip.com
Nicole Fundora
Fla. Bar No. 1010231
Email: nfundora@brickellip.com
*Counsel for Plaintiff*