UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 8:21-cv-01082-KKM-CPT

AIN JEEM, INC.,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A,"

    Defendants.
_____/

**ORDER GRANTING**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff, Ain Jeem, Inc., moves for a preliminary injunction against the Defendants, Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A" (collectively Defendants), and an order restraining the financial accounts used by Defendants under 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, and The All Writs Act, 28 U.S.C. § 1651(a).

On May 17, 2021, Ain Jeem filed a sealed, *ex parte* motion for a temporary restraining order, preliminary injunction, and order restraining the transfer of assets. (Doc. 10). The Court granted the motion and set a hearing for the conversion of the TRO into a preliminary injunction for June 3, 2021. (Doc. 20). On May 28, 2021, the

Court granted a two-week extension of the TRO due to the failure of third-party providers of financial accounts to process and restrain Defendants' accounts. (Doc. 25).

The Court convened a hearing on June 17, 2021, at which only counsel for Ain Jeem was present and available to present evidence supporting the Motion. Because Ain Jeem has satisfied the requirement for the issuance of a preliminary injunction, Plaintiff's Motion for Preliminary Injunction is granted as to all Defendants.

I.  **FACTUAL BACKGROUND**

Ain Jeem is the owner of the following trademark, which is valid and registered on the Principal Register of the United States Patent and Trademark Office:

| Trademark | Registration Number | Registration Date | First Use Date | Classes / Goods |
|---|---|---|---|---|
| Kareem Abdul-Jabbar | 2,074,575 | 06/24/1997 | 01/25/1990 | IC 025: athletic and athletically inspired clothing in the nature of T-shirts, and socks |

Plaintiff is also the owner of the following logo:



(the KAR33M Logo) (collectively the Kareem Abdul-Jabbar Marks). *See* Declaration of Deborah Morales in Support of Plaintiff's Motion for TRO (Morales Decl.) at ¶ 4; *see also* United States Trademark Registration for the Kareem Abdul-Jabbar Standard

Character Mark (Doc. 1-1). The Kareem Abdul-Jabbar Marks are used in connection with the design, marketing, and distribution of high-quality goods in the category identified above. *See* Morales Decl at ¶ 4; (Doc. 1-1).

The Defendants, through the various Internet based e-commerce stores operating under the seller identities and domain names identified on Schedule "A" to the Complaint (the Seller IDs), have advertised, promoted, offered for sale, or sold goods bearing and/or using what Ain Jeem has determined to be counterfeits, infringements, reproductions, or colorable imitations of the Kareem Abdul-Jabbar Marks. *See* Morales Decl. at ¶¶ 17-20; Declaration of Richard Guerra in Support of Plaintiff's Motion for TRO (Guerra Decl.) at ¶ 5.

Ain Jeem has submitted sufficient evidence showing each of the Defendants has infringed at least one of the Kareem Abdul-Jabbar Marks. *See* Guerra Decl. at ¶ 4, Schedule C. The Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Kareem Abdul-Jabbar Marks. *See* Morales Decl. at ¶ 17.

Ain Jeem investigated the promotion and sale of counterfeit and infringing versions of its branded and protected products by the Defendants. *See* Morales Decl. at ¶¶ 17-20. Ain Jeem accessed each of the e-commerce stores operating under the Defendants' Seller IDs, initiated the ordering process for the purchase of a product from each of the Seller IDs, bearing counterfeits of the Kareem Abdul-Jabbar Marks at issue in this action, and requested each product to be shipped to an address in the Southern District

of Florida. *See id.*; *see also* Guerra Decl. at ¶ 5. Ain Jeem conducted a review and visually inspected the Kareem Abdul-Jabbar branded items for which orders were initiated by Ain Jeem's third-party investigator via the Seller IDs and determined that the products were nongenuine, unauthorized versions of Ain Jeem's products. *See id.* Most, but not all, defendants are foreign aliens allegedly engaged in infringing activities and causing harm within the Middle District of Florida by advertising, offering to sell, selling, or shipping infringing products into this District. (Doc. 1 at ¶ 8); Guerra Decl. at ¶ 5.

## II. LEGAL STANDARD

To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

## III. CONCLUSIONS OF LAW

The declarations that Ain Jeem submitted along with its Motion for Preliminary Injunction support the following conclusions of law:

A. Ain Jeem has a strong probability of proving at trial that (1) consumers are likely to be confused by the Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing and/or using counterfeits, reproductions, or

4

colorable imitations of the Kareem Abdul-Jabbar Marks, and that (2) the products Defendants are selling and promoting for sale are copies of Ain Jeem's products which bear copies of the Kareem Abdul-Jabbar Marks. *See Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999) (applying test to § 32 of the Lanham Act); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (applying test to § 43 of the Lanham Act); *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investacorp) E.C.*, 931 F.2d 1519, 1521 (11th Cir. 1991) (applying same test to Florida claims of unfair competition and trademark infringement).

    B.    Because of the infringement of the Kareem Abdul-Jabbar Marks, Ain Jeem is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. The following specific facts, as set forth in Ain Jeem's Complaint, Motion, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to it and to consumers in view of the following considerations, *see also Levi-Strauss & Co.*, 51 F.3d at 986 ("This court has previously stated that such trademark infringement[ and counterfeit activities] 'by its nature causes irreparable harm.'" (quoting *Tally-Ho, Inc. v. Coast Cmty. College Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989))):

        1.    The Defendants own or control Internet based e-commerce stores and websites which advertise, promote, offer for sale, and sell products bearing counterfeit and infringing trademarks in violation of Ain Jeem's rights;

    2. There is good cause to believe that more counterfeit and infringing products bearing Ain Jeem's trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that Ain Jeem may suffer loss of sales for its genuine products and an unnatural erosion of the legitimate marketplace in which it operates, *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190–91 (11th Cir. 2005); and

  C. The balance of potential harm to the Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to Ain Jeem, its reputation, and its goodwill as a manufacturer and distributor of quality products if such relief is not issued.

  D. The public interest favors issuance of the temporary restraining order to protect Ain Jeem's trademark interests, to encourage respect for the law, to facilitate the invention and development of innovative products, and to protect the public from being defrauded by the illegal sale of counterfeit goods.

  E. Under 15 U.S.C. § 1117(a), Ain Jeem may be entitled to recover, as an equitable remedy, the illegal profits gained through the Defendants' distribution and sales of goods bearing counterfeits and infringements of the Kareem Abdul-Jabbar Marks. *See Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1359 (11th Cir. 2019) ("[A]n accounting and disgorgement of a defendant's profits in a trademark infringement case is equitable in nature . . . ."); *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) ("An accounting of profits under § 1117(a) is not

6

synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'" (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962))).

F. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G. In the light of the inherently deceptive nature of the counterfeiting business, and the likelihood that the Defendants have violated federal trademark laws, Ain Jeem has good reason to believe the Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

Upon review of the Complaint, Motion, and supporting evidentiary submissions, Ain Jeem's Motion for Preliminary Injunction (Doc. 11) is **GRANTED**, and the following is **ORDERED**:

(1) Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order are restrained and enjoined until further order from this Court as follows:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Kareem Abdul-

Jabbar Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Ain Jeem;

      b.    From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Ain Jeem, bearing and/or using the Kareem Abdul-Jabbar Marks, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the Kareem Abdul-Jabbar Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any of the Defendants, including, but not limited to, any assets held by or on behalf of any of the Defendants; and

      c.    From using any reproduction, counterfeit, copy, or colorable imitation of the Kareem Abdul-Jabbar Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants.

(2)    Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order shall immediately discontinue the use of the Kareem Abdul-Jabbar Marks, or confusingly similar trademarks, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs.

(3)     Each of the Defendants shall not transfer ownership of the Seller IDs during the pendency of this action, or until further Order of the Court.

(4)     Upon receipt of notice of this Order, the Defendants and any third party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who is providing services for any of the Defendants, including but not limited to, AliExpress, Alipay, Dhgate, Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, Ebay, Etsy, and/or Taobao, and their related companies and affiliates (collectively, the Third-Party Providers), shall after receipt of notice of this Order, restrain the transfer of all funds, including funds relating to ongoing account activity, held or received for the Defendants' benefit or to be transferred into the Defendants' respective financial accounts, restrain any other financial accounts tied thereto, and immediately divert those restrained funds to a holding account for the trust of the Court. Such restraining of the funds and the disclosure of the related financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any Third-Party Provider for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

(5)     Any Defendant or Third-Party Provider subject to this Order may petition the Court to modify the asset restraint set out in this Order.

(6) This Order shall apply to the Seller IDs associated ecommerce stores and websites, and any other seller identification names, e-commerce stores, domain names, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting and infringing the Kareem Abdul-Jabbar Marks at issue in this action or unfairly competing with Ain Jeem.

(7) This Order shall remain in effect during the pendency of this action, or until such further dates as set by the Court or stipulated to by the parties.

(8) Under 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Ain Jeem maintain its previously posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which the Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court.

**ORDERED** in Tampa, Florida on June 17, 2021.

Kathryn Kimball Mizelle
United States District Judge