UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AIN JEEM, INC.,

     Plaintiff,

v.                                     Case No. 8:21-cv-1082-KKM-CPT

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A,"

     Defendants.

_____/

## **REPORT AND RECOMMENDATION**

Before me on referral is Plaintiff Ain Jeem, Inc.'s (Ain Jeem) motion for the entry of a default judgment against the Defendants in this action, all of whom are more particularly described in Schedule "A" to Ain Jeem's motion (collectively, Defendants).[1] (Doc. 49). For the reasons set forth below, I respectfully recommend

---

[1] The Defendants do not include the individuals and entities that Ain Jeem voluntarily dismissed before and after it filed the instant motion. Those individuals and entities consist of Defendant No. 1 (Fuzhou Dandanlianlian Trading Co., Ltd.) listed in Schedule "A" to the instant motion, as well as Defendants Nos. 59 (Hall-O-Fame Group's Booth); 3 (phanaticsports' booth); 4 (hollywoodmintscripts' booth); 7 (PostseasonPrints); 17 (touheedg.com); 18 (nbajerseysmart.top); 19 (cetemexsar.com); and 20 (nbaequipshop.org) referenced in Schedule "A" to Ain Jeem's complaint. (Docs. 27, 39, 41, 43, 47, 52).

that Ain Jeem's motion be granted and that a default judgment be entered against the Defendants.

I.

The following background is based on the well-pleaded allegations contained in Ain Jeem's complaint (Doc. 1), as well as on the exhibits attached to its motion and to its prior request for a preliminary injunction (Docs. 10-1, 10-2, 10-3, 49-2).  The facts established by those submissions are deemed to be true for purposes of Ain Jeem's motion.  *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005); *E.E.O.C. v. Titan Waste Servs. Inc.*, 2014 WL 931010, at *6 (N.D. Fla. Mar. 10, 2014).

Ain Jeem is an international licensing company specializing in the worldwide distribution of content, brand management, and consumer products rights.   (Doc. 1 at ¶ 10).  Ain Jeem also owns the following logo and trademark, the latter of which is registered on the Principal Register of the United States Patent and Trademark Office (USPTO):

| Trademark | Registration Number | Registration Date | First Use Date | Class / Goods |
|---|---|---|---|---|
| Kareem Abdul-Jabbar | 2,074,575 | 06/24/1997 | 01/25/1990 | IC 025: athletic and athletically inspired clothing in the nature of T-shirts, and socks |



(collectively, the Marks).  (Doc. 1 at ¶¶ 10, 28; Doc. 10-3 at ¶ 4).  The Marks are associated with Kareem Abdul-Jabbar, the former collegiate and professional basketball player, and are used in connection with the design, marketing, and distribution of high-quality athletic and athletically inspired clothing.  (Doc. 1 at ¶¶ 11–18, 29).

Ain Jeem has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the Marks in association with its merchandise.  (Doc. 1 at ¶ 31; Doc. 10-3 at ¶ 7).  The Defendants, through the various internet-based e-commerce stores operating under the seller identification names and/or commercial internet websites operating under the domain names set forth in Schedule "A" to Ain Jeem's motion (collectively, Seller IDs), have advertised, promoted, offered for sale, or sold goods throughout the United States, which bear and/or use what Ain Jeem has determined to be counterfeits, infringements, reproductions, or colorable imitations of the Marks.  (Doc. 1 at ¶¶ 35, 38; Doc. 10-3 at ¶¶ 17–20; Doc. 49-1).  The Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Marks.  (Doc. 1 at ¶ 41; Doc. 10-3 at ¶ 17).

Ain Jeem conducted an investigation of the Defendants' promotion and sale of counterfeit and infringing versions of its branded and protected products.  (Doc. 10-3 at ¶¶ 17–20).  In doing so, Ain Jeem accessed each of the e-commerce stores operating under the Defendants' Seller IDs, initiated the ordering process for the purchase of a product from each of the Seller IDs bearing counterfeits of the Marks, and requested

3

that each product be shipped to an address in Florida.  (Doc. 10-1 at ¶ 5; Doc. 10-3 at ¶¶ 17–20).  Ain Jeem then inspected these branded items and found that they were nongenuine, unauthorized versions of its products.  (Doc. 10-1 at ¶ 5; Doc. 10-3 at ¶ 20).  According to Ain Jeem, each Defendant has infringed the Marks for at least one category of goods.  (Doc. 10-1; Doc. 10-3 at ¶¶ 17–20, 35–48).

Following its investigation, Ain Jeem initiated this lawsuit against the Defendants, asserting claims for trademark counterfeiting and infringement under section 32 of the Lanham Act, 15 U.S.C. § 1114 (Count I); false designation of origin under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II); unfair competition under Florida common law (Count III); and trademark infringement under Florida common law (Count IV).  (Doc. 1).  At the outset of the case, the Court granted Ain Jeem's request that it be allowed to utilize alternative service of process on the Defendants.  (Doc. 19).  The Court also entered an *ex parte* temporary restraining order against the Defendants, which it later converted into a preliminary injunction. (Docs. 20, 32).  Among other things, the preliminary injunction instructed that (1) the Defendants cease their manufacture of products bearing the Marks; and (2) any third-party financial institutions providing services for any of the Defendants restrain the transfer of all funds held or received for the Defendants' benefit, and immediately divert those funds to a holding account for the trust of the Court.  (Doc. 32).  Ain Jeem subsequently received notice that the applicable third-party financial institutions had complied with the requirements of the Court's preliminary injunction. (Doc. 49-2).

Ain Jeem then filed proof of service reflecting that each Defendant was properly served in accordance with the Court's Order regarding alternative service of process. (Doc. 45). When the Defendants thereafter failed to answer Ain Jeem's complaint or otherwise defend the action, Ain Jeem obtained a Clerk's default against them. (Doc. 48).

By way of the instant motion, Ain Jeem now asks that the Court enter a default judgment against the Defendants on all the counts in its complaint. (Doc. 49). The specific relief Ain Jeem seeks includes (1) a permanent injunction enjoining the Defendants' unlawful use of the Marks; (2) an award of statutory damages pursuant to the Lanham Act; and (3) a directive that any third-party financial institutions in the possession of any funds restrained or held on behalf of the Defendants transfer those funds to Ain Jeem in partial satisfaction of the damages award. (Docs. 49, 50-1). The Defendants have not responded to Ain Jeem's motion, and the time for doing so has elapsed. M.D. Fla. R. 3.01(c). The matter is therefore ripe for the Court's consideration.

## II.

Federal Rule of Civil Procedure 55(b) provides that where, as here, a Clerk's default has been entered, a plaintiff may apply to either the Clerk or the court for the entry of a default judgment. Fed. R. Civ. P. 55(b). Before awarding such relief, however, a court must "ensure that it has jurisdiction over the claims and parties." *Wagner v. Giniya Int'l Corp.*, 2020 WL 7774385, at *1 (M.D. Fla. Dec. 3, 2020), *report and recommendation adopted*, 2020 WL 7768949 (M.D. Fla. Dec. 30, 2020). Part of this

inquiry obligates a court to confirm that a defendant who is the subject of the default judgment has been properly served with the complaint. *Opella v. Rullan*, 2011 WL 2600707, at *4 (S.D. Fla. June 29, 2011) ("Insufficient or improper service of process cannot support the entry of a default judgment, even if the defendant has actual notice of the suit."), *report and recommendation adopted*, 2011 WL 13220496 (S.D. Fla. Aug. 9, 2011).

If jurisdiction is established, a court must then ascertain whether "there is 'a sufficient basis in the pleadings for the judgment entered.'" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (per curiam) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). The burden on the movant in this context is akin to the one borne by a party seeking to defeat a motion to dismiss for failure to state a claim. *Graveling v. Castle Mortg. Co.*, 631 F. App'x 690, 698 (11th Cir. 2015) ("The requisite factual showing for a default judgment is similar to the factual showing necessary to survive a motion to dismiss for failure to state a claim.") (per curiam) (citing *Surtain*, 789 F.3d at 1245);[2] *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.") (citations omitted). Thus, a court looks to see whether the complaint contains adequate factual averments, which—if accepted as true—state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[2] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

If a claim is properly pleaded, a court must then address the issue of damages. In Lanham Act cases involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of products, a plaintiff may recover either statutory or actual damages.  15 U.S.C. §§ 1117(a), (c).  Statutory damages under the Lanham Act may be for a sum of not less than $1,000 but no more than $200,000 per counterfeit mark per type of good or service, as a court considers just.  *Id*. § 1117(c)(1).  Where a court finds that a defendant's counterfeiting actions were willful, however, it may impose statutory damages above the maximum limit, up to $2,000,000 per mark per type of good or service.  *Id.* § 1117(c)(2).

The fact that a plaintiff may not be able to prove actual damages caused by a defendant's infringement does not preclude an award of statutory damages.  *Under Armour, Inc. v. 51nfljersey.com*, 2014 WL 1652044, at *7 (S.D. Fla. Apr. 23, 2014) ("'[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.'") (quoting *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006)); *Playboy Enters., Inc. v. Universal Tel-A-Talk, Inc.*, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages despite the fact that the plaintiff failed to prove actual damages or profits).  Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain.  *See, e.g.*, S. REP. NO. 104-177, pt. V(7) (1995) (discussing the purpose of Lanham Act statutory damages).  For similar reasons, courts have concluded that statutory damages are especially "appropriate in default

7

judgment cases." *PetMed Express, Inc. v. MetPets.com, Inc.*, 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004) (collecting cases).

To decide the amount of damages to be granted, a court may conduct an evidentiary hearing on the matter. Fed. R. Civ. P. 55(b)(2)(B). Such a hearing is not necessary, however, where the sought-after damages constitute a liquidated sum, are capable of mathematic calculation, or "where all essential evidence is already of record." *Secs. & Exch. Comm'n v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) (citation omitted); *see also Perry Ellis Int'l, Inc. v. URI Corp.*, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007) (observing that a court may grant statutory damages "based upon affidavits and other documentary evidence if the facts are not disputed"); *PetMed Express*, 336 F. Supp. 2d at 1217 (finding there was no need for a hearing where the plaintiff sought statutory damages and "attached detailed declarations with accompanying documentary evidence" to its motion for default judgment). In the end, resolution of the issue of damages is left to a court's sound discretion. *PetMed Express*, 336 F. Supp. 2d at 1219 (citing *Cable Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990); *Microsoft Corp. v. Tierra Computer, Inc.*, 184 F. Supp. 2d 1329, 1331 (N.D. Ga. 2001)); *Axiom Worldwide, Inc. v. Excite Medical Corp.*, 591 F. App'x 767, 775 (11th Cir. 2014).

Beyond awarding damages, a court in a Lanham Act action may also enter an injunction "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent violations of trademark law. 15 U.S.C. § 1116(a). In fact, "'injunctive relief is the remedy of choice for trademark and unfair competition

cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.'" *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (quoting *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)).  This is true even where the injunctive relief is sought on a motion for a default judgment. *PetMed Express, Inc.*, 336 F. Supp. 2d at 1222–23 (issuing injunctive relief and entering a default judgment on the plaintiff's trademark claims); *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) (granting the plaintiff a permanent injunction after finding that the defendant's "lack of participation in th[e] litigation [gave] the court no assurance that [the] defendant's infringing activity [would] cease").

Each of the above considerations—jurisdiction, liability, damages, and injunctive relief—will be addressed in turn.

## III.

## A.

There is little question that the Court has subject matter jurisdiction over both Ain Jeem's Lanham Act claims and its common law claims for trademark infringement and unfair competition.  Beginning with the former, 28 U.S.C. § 1331 grants federal courts original jurisdiction over all civil actions "arising under" the laws of the United States, including the Lanham Act.  28 U.S.C. § 1331; 15 U.S.C. §§ 1114, 1125.  Further, the Lanham Act itself explicitly grants federal courts original jurisdiction over lawsuits alleging violations of its provisions.  15 U.S.C. § 1121(a).  As for Ain Jeem's common law causes of action, the Court has supplemental jurisdiction

over those claims because they "are so related to" Ain Jeem's Lanham Act counts "that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

There is likewise little question that the Court has personal jurisdiction over the Defendants.   The concept of personal jurisdiction is comprised of two distinct components: amenability to jurisdiction and service of process.  *Prewitt Enters., Inc. v. Org. of Petrol. Exp. Countries*, 353 F.3d 916, 925 n.15 (11th Cir. 2003) (quoting *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1264 (5th Cir. 1983)).   "Amenability to jurisdiction" means that a particular defendant is within the substantive reach of the court's jurisdiction under the governing law.   *DeMelo*, 711 F.2d at 1264 (citation omitted).   Service of process, on the other hand, "is simply the physical means by which that jurisdiction is asserted."   *Id.* (citation omitted).

With respect to amenability to jurisdiction, the Defendants direct business activities toward and conduct business with consumers throughout the United States, including Florida.  (Doc. 1 at ¶¶ 7, 8; Doc. 10-1 at ¶ 5).  They also engage in unlawful activities in Florida by advertising, shipping, selling, or offering to sell infringing products in this state, all of which causes harm.  *Id.*  As such, the Defendants fall within Florida's long-arm jurisdiction, *see* Fla. Stat. § 48.193, and the Court's jurisdiction over them comports with due process, *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 392 (11th Cir. 1988) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

With respect to service of process, Ain Jeem has presented proof that it complied with this requirement by properly serving the Defendants in accordance with

the Court's Order authorizing alternative service of process.  (Docs. 19, 45); *see also* Fed. R. Civ. P. 4(f)(3) (providing that service may be accomplished "by other means not prohibited by international agreement, as the court orders").  In light of the above, I find that the Court has jurisdiction over both the claims and the parties.

B.

Turning to the issue of liability, as noted above, Ain Jeem asserts claims against the Defendants under sections 32 and 43(a) of the Lanham Act, as well as for unfair competition and trademark infringement under Florida common law. (Doc. 1).  Upon review of the record before the Court, including the well-pleaded factual allegations contained in Ain Jeem's complaint and the sworn declarations and other evidence Aim Jeem has submitted (Docs. 1, 1-1, 10-1, 10-2, 10-3, 49-2), I find that it is entitled to relief on all four of its causes of action.

Section 32 of the Lanham Act renders a defendant liable for trademark infringement for "us[ing] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services," where such use is not authorized and is "likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(1)(a).   To prevail on a section 32 claim, a plaintiff must establish that (1) it possesses a valid trademark;[3] (2) the defendant used that mark; (3) the defendant's use

---

[3] A trademark is defined under the Lanham Act as "any word, name, symbol, or device, or any combination thereof [used] . . . to identify and distinguish [one's] goods . . . from those manufactured or sold by others and to indicate the source of the goods."  15 U.S.C. § 1127.

of the mark occurred "in commerce;" (4) the defendant used the mark "in connection with the sale . . . or advertising of any goods;" and (5) the defendant used the mark in a manner likely to confuse consumers. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008) (citations omitted).   The analysis for trademark infringement under Florida common law is the same as under the Lanham Act. *PetMed Express*, 336 F. Supp. 2d at 1217–18 (citation omitted).

Here, Ain Jeem asserts that it is the owner of the Kareem Abdul-Jabbar trademark and attaches to its complaint a copy of the USPTO trademark registration for that mark.  (Doc. 1 at ¶ 10; Doc. 1-1); *see FSC Franchise Co., LLC v. Express Corp. Apparel, LLC*, 2011 WL 1226002, at *4 (M.D. Fla. Feb. 28, 2011), *report and recommendation adopted*, 2011 WL 1153840 (M.D. Fla. Mar. 29, 2011) (finding that the plaintiff established it possessed valid trademarks by "identifying the registration numbers of each mark and [by] providing copies of the marks from the [USPTO]"). Ain Jeem also avers that the Defendants sold counterfeit goods to the pubic via e-commerce stores on internet marketplace websites without Ain Jeem's consent or approval, and that the Defendants' unauthorized conduct caused confusion in the marketplace. (Doc. 1 at ¶¶ 35–37, 41–43).  Based on these allegations and Aim Jeem's other submissions, I find that it has adequately pleaded its claims for trademark infringement under the Lanham Act and Florida common law, as stated in Counts I and IV of its complaint.

As for Ain Jeem's claim pursuant to section 43(a) of the Lanham Act, that provision prohibits a "false or misleading representation of fact" that is "likely to cause

12

confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A). A plaintiff asserting a cause of action pursuant to section 43(a) must demonstrate that (1) it had an enforceable trademark right in the marks in question; and (2) the defendant engaged in an unauthorized use of the marks, such that consumers were likely to confuse the two. *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).

As discussed previously, Ain Jeem alleges that it has a valid trademark and that the Defendants used that mark without its consent. (Doc. 1 at ¶¶ 10, 35–37, 41–43; Doc. 1-1). Ain Jeem additionally asserts that the Defendants' unauthorized use of its mark is likely to cause confusion among consumers and to create the false impression that the products offered for sale by the Defendants originated with or are approved by Ain Jeem. (Doc. 1 at ¶¶ 57–61). Given these averments, I find that Ain Jeem has sufficiently pleaded its claim under section 43(a) the Lanham Act, as alleged in Count II. *See also Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994) (per curiam) (noting that "[t]he same set of facts enabling [a plaintiff] to prevail under [section 32] will result in recovery pursuant to [section 43(a)])") (citation omitted).

To succeed on its remaining claim for unfair competition under Florida common law, Ain Jeem must show both "'deceptive or fraudulent conduct'" by a competitor, as well as "'likelihood of consumer confusion.'" *Webster v. Dean Guitars*, 955 F.3d 1270, 1277 (11th Cir. 2020) (quoting *Donald Frederick Evans & Assocs., Inc. v.*

13

*Cont'l Homes, Inc.*, 785 F.2d 897, 914 (11th Cir. 1986)).  It has done so here.  As noted, Ain Jeem asserts in its complaint that the Defendants are selling and distributing counterfeit goods to unfairly compete with it, and that the Defendants' activities are likely to, and do in fact, cause confusion, mistake, and deception among the public. (Doc. 1 at ¶¶ 65–67).  As a result, Ain Jeem has properly pleaded a claim for unfair competition under Florida common law, as stated in Count IV.

C.

The next issue the Court must address is the statutory damages to which Ain Jeem is entitled.  As explained earlier, the well-pleaded allegations in Aim Jeem's complaint establish that the Defendants intentionally copied the Marks for the purpose of deriving the benefit of Kareem Abdul-Jabbar's name and reputation.  As such, the Lanham Act permits the Court to award statutory damages of up to $2,000,000 per infringing mark to ensure that the Defendants do not continue their and willful counterfeiting activities.

In light of the facts of this case, Ain Jeem requests that the Court award statutory damages in the amount of $100,000 against each Defendant.  (Doc. 49).  Ain Jeem asserts that such an award coheres with the Lanham Act's stated goals because it would compensate Ain Jeem for the losses it has sustained, would punish the Defendant for their infringing conduct, and would also deter the Defendants and others from engaging in such illicit behavior in the future.  *Id.*

I agree that an award of $100,000 against each Defendant is just and appropriate under the circumstances presented.  I note in this regard that this amount is within the

14

permissible range under 15 U.S.C. § 1117(c), and is also equal to or less than the statutory damages authorized by other courts based upon similar facts.  *See, e.g.*, *Ain Jeem, Inc. v. The Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 8:21-cv-1261-VMC-JSS, (Doc. 88) (M.D. Fla. Jan. 27, 2022) (recommending statutory damages in the amount of $100,000 against each defendant under the Lanham Act), *report and recommendation adopted*, (Doc. 89) (M.D. Fla. Feb. 15, 2022); *Maxi's Creations, Inc. v. The Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A"*, 2022 WL 104216, at *8 (S.D. Fla. Jan. 11, 2022) (same); *Chanel, Inc. v. Fendona*, 2019 WL 7666544, at *17 (S.D. Fla. May 23, 2019) (awarding statutory damages of $1,000,000 against each defendant under the Lanham Act); *Under Armour, Inc.*, 2014 WL 1652044, at *8 (awarding $1,836,000 in statutory damages for use of counterfeit marks); *PetMed Express*, 336 F. Supp. 2d at 1221 (awarding $400,000 per infringing mark, for a total of $800,000, in statutory damages). I further note that Ain Jeem does not seek any additional monetary damages for Counts II, III, and IV.  (Doc. 49 at 19).  Thus, I respectfully recommend that judgment on Counts I, II, III, and IV be limited to $100,000 against each Defendant.

D.

The final matter that the Court must consider is Ain Jeem's request for a permanent injunction under the Lanham Act.  A plaintiff seeking such relief must demonstrate that (1) it has suffered an irreparable injury; (2) monetary damages and other legal remedies are inadequate to compensate for that injury; (3) equitable relief is warranted considering the balance of hardships between the plaintiff and the

defendant(s); and (4) the public interest would not be disserved by a permanent injunction. *See eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390–92 (2006). In the Eleventh Circuit, "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . [a] substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) (quoting *E. Remy Martin & Co. v. Shaw–Ross Int'l Imports*, 756 F.2d 1525, 1530 (11th Cir.1985)).

Here, Ain Jeem avers that the Defendants' infringing activities have caused it irreparable harm and will continue to do so if the Defendants are not permanently barred from engaging in such unlawful conduct in the future. (Doc. 1 at ¶¶ 37–39, 50–55, 57–63, 65–68, 70–73). Ain Jeem additionally alleges that the unauthorized products bearing the Marks which the Defendants market, advertise, sell, offer to sell, and distribute are nearly identical to Ain Jeem's genuine products and that consumers would mistakenly believe the Defendants' counterfeit products originated from Ain Jeem. *Id.* at ¶¶ 35–39, 58.

Against this backdrop, I find that a permanent injunction is warranted. To begin, as long as the Defendants persist in operating the Seller IDs, Ain Jeem has no adequate remedy at law because it cannot regulate the quality of what falsely appear to be its Kareem Abdul-Jabbar products in the marketplace. An award of monetary damages alone will also not cure the injury to Ain Jeem's reputation and goodwill caused by the Defendants' continued infringing and counterfeiting actions. Moreover, Ain Jeem faces hardship from the loss of sales and its inability to control its reputation

16

in the commercial realm.  By contrast, the Defendants would not experience any hardship if they were prohibited from infringing Ain Jeem's trademarks, which are illegal acts.  And lastly, the public interest supports the issuance of a permanent injunction against the Defendants to prevent consumers from being misled by the Defendants' counterfeit products.  *See Nike, Inc. v. Leslie*, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior.").

In sum, in light of the Defendants' internet-based infringement scheme which allows them to profit from their deliberate misappropriation of Ain Jeem's rights, it is fair and proper for the Court to utilize its broad equitable powers to fashion injunctive relief aimed at eliminating the Defendants' ability to engage in their unlawful activities.  *See Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to [mold] each decree to the necessities of the particular case.") (citation and internal quotation marks omitted); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").  Accordingly, I respectfully recommend that the Court permanently enjoin the Defendants from conducting their infringing activities and also award Ain Jeem the following sought-after equitable relief: (1) a requirement that the website operators and/or administrators for the internet-based ecommerce stores

17

operating under Seller IDs permanently remove listings and associated images of goods bearing counterfeits and/or infringements of the Marks; (2) a requirement that any internet marketplace website operator and/or administrator who is in possession, custody, or control of the Defendants' goods bearing one or more of the Marks permanently cease fulfillment of and sequester those goods, and surrender same to Ain Jeem; and (3) a requirement that the third-party financial institutions in possession of any funds restrained or held on behalf of the Defendants transfer those funds to Ain Jeem in partial satisfaction of the award of damages.   *Id*.  Such relief is well-supported by the case law.  *See e.g.*, *Michael Kors, L.L.C. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, No. 19-cv-63119-RKA, (Doc. 40 at 2–3) (S.D. Fla. Apr. 27, 2020) (mandating, *inter alia*, the website operators and/or administrators for certain seller IDs to permanently remove all listings and associated images of products bearing counterfeits and/or infringements of the plaintiff's trademarks); *Adidas AG v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, No. 19-cv-63109-RKA, (Doc. 46 at 3–5) (S.D. Fla. Mar. 31, 2020) (directing financial institutions and others to transfer to the plaintiffs all funds in the defendants' financial accounts); *Chanel, Inc. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, No. 19-cv-62102-RKA, (Doc. 60 at 4) (S.D. Fla. Nov. 6, 2019) (instructing website operators and/or administrators in possession of the Defendants' goods bearing the infringing marks to permanently cease fulfillment and surrender same to the plaintiff); *Gucci America, Inc. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, No. 19-cv-61447-RKA, (Doc. 42 at 3) (S.D. Fla. Oct. 16, 2019) (same).

18

IV.

Based on the foregoing, I respectfully recommend that the Court:

1.      Grant Ain Jeem's motion for a default judgment (Doc. 49) as to the Defendants identified in the revised Schedule "A" attached to Ain Jeem's motion, who have not been voluntarily dismissed (Docs. 49-1, 52).

2.      Direct that the Clerk of Court enter a default judgment in favor of Ain Jeem and against the above-identified Defendants as to all counts of the complaint (Doc. 1), in the amount of $100,000 in statutory damages against each Defendant pursuant to 15 U.S.C. § 1117(c), with interest to accrue at the legal rate pursuant to 28 U.S.C. § 1961.

3.      Direct that the Defendants and their officers, directors, employees, agents, subsidiaries, distributors, and all persons acting in concert and participation with the Defendants be permanently restrained and enjoined from:

   a. manufacturing or causing to be manufactured, importing, advertising, promoting, distributing, selling, or offering to sell counterfeit and infringing goods bearing the Marks, or any confusingly similar trademarks;

   b. using the Marks in connection with the sale of any unauthorized goods;

   c. using any logo and/or layout which may be calculated to falsely advertise the services or products of the Defendants as being sponsored, authorized, or endorsed by Ain Jeem, or in any way associated with Ain Jeem;

   d. falsely representing themselves as being connected with Ain Jeem through sponsorship or association;

e.   engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of the Defendants are in any way endorsed by, approved by, and/or associated with Ain Jeem;

f.   using any reproduction, counterfeit, copy, or colorable imitation of the Marks in connection with the publicizing, promotion, sale, or advertising of any goods sold by the Defendants;

g.   affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent goods offered for sale or sold by the Defendants as being those of Ain Jeem or in any way endorsed by Ain Jeem;

h.   otherwise unfairly competing with Ain Jeem;

i.   using the Marks, or any confusingly similar trademarks on e-commerce marketplace sites, domain name extensions, metatags (or other markers within website source code), any webpage (including as the title of any web page), advertising links to other websites, search engines' databases or cache memory, and any other form which is visible to a computer user or serves to direct computer searches to e-commerce stores, websites, and/or internet businesses registered, owned, or operated by the Defendants; and

j.   effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above.

4.   Direct that the internet marketplace website operators and/or administrators for the internet-based ecommerce stores operating under the Seller IDs, including, but not limited to, AliExpress, Alipay, Dhgate, Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, eBay, Etsy, and/or Taobao, permanently remove

any and all listings and associated images of goods bearing counterfeits and/or infringements of the Marks via the e-commerce stores operating under the Seller IDs, and any other listings and images of goods bearing counterfeits and/or infringements of the Marks associated with the same sellers or linked to any other alias seller identification names or e-commerce stores being used and/or controlled by the Defendants to promote, offer for sale, and/or sell goods bearing counterfeits and/or infringements of the Marks.

5.     Direct that any internet marketplace website operator and/or administrator who is in possession, custody, or control of the Defendants' goods bearing one or more of the Marks, including, but not limited to, Alibaba.com Hong Kong Limited (which operates the AliExpress.com platform (AliExpress)), DHgate.com, eBay Inc., SIA Joom (which operates the Joom.com platform (Joom)), and ContextLogic, Inc. (which operates the Wish.com platform), permanently cease fulfillment of and sequester those goods, and surrender same to Ain Jeem.

6.     Direct that all funds currently restrained or held on account for all the Defendants by all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including, but not limited to, Alibaba.com Hong Kong Limited (which operates AliExpress), Zhejiang Ant Small and Micro Financial Services Group Co., Ltd. (Ant Financial Services), AliPay (China) Internet Technology Co. Ltd. and Alipay.com Co., Ltd. (collectively, Alipay), Worldpay US, Inc. (Worldpay), Dunhuang Group (which operates the DHgate.com and DHPay.com platforms), Camel FinTech Inc, SIA Joom (which operates Joom),

21

and PayPal, Inc. (PayPal), and their related companies and affiliates, be immediately (within five business days) transferred by the above-referenced financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms and by the Defendant, to Ain Jeem and/or its counsel in partial satisfaction of the monetary judgment entered herein against each Defendant.  All financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including, but not limited to, AliExpress, Alipay, Dhgate, Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, eBay, Etsy, and/or Taobao, and their related companies and affiliates, shall provide to Ain Jeem at the time the funds are released, a breakdown reflecting the (i) total funds restrained in this matter per Defendant; (ii) total chargebacks, refunds, and/or transaction reversals deducted from each of the Defendant's funds restrained prior to release; and (iii) total funds released per Defendant to Ain Jeem.

7.     Direct that the Clerk of Court release the bond Ain Jeem posted in the amount of $10,000.

8.     Retain jurisdiction to enforce the final judgment and permanent injunction.

9.     Direct that the Clerk of Court close this case, terminate all deadlines and hearings, and deny any pending motions as moot.

Respectfully submitted this 23rd day of February 2022.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

### NOTICE

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1)

Copies to:
Honorable Kathryn Kimball Mizelle, United States District Judge
Counsel of record