UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AIN JEEM, INC.,

    Plaintiff,

v.                                            Case No: 8:21-cv-1082-KKM-CPT

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

    Defendants.
_____

## ORDER

Ain Jeem, Inc., sued thirty-five individuals and entities, complaining of trademark infringement and unfair competition. Ain Jeem voluntarily dismissed four of these Defendants, received a clerk's default against the rest, and moved for a default judgment and permanent injunction. The Court referred the motion to the Magistrate Judge, who now recommends granting the default judgment and permanent injunction. The fourteen-day deadline for Defendants to object to the Magistrate Judge's recommendation has passed without objection. Nevertheless, the Court reviews the Magistrate Judge's legal conclusions de novo. *See Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994); *see LeCroy v. McNeil*, 397 F. App'x 554, 556 (11th Cir. 2010) (per curiam).

After a de novo review, the Court adopts-in-part the Magistrate Judge's recommendation that the Court enter default judgment and a permanent injunction against the remaining Defendants. Although the Court agrees that default judgment is warranted, it must impose a narrower injunction than that requested by Ain Jeem so that it reaches only those parties the Court has the power to bind.

I. BACKGROUND[1]

Few facts are necessary to explain the Court's decision to narrow the requested injunction. The rest can be obtained from the Magistrate Judge's Report and Recommendation (Doc. 53.) Ain Jeem owns the trademark "Kareem Abdul-Jabbar" as well as the "KAR33M" logo. (Doc. 1 ¶ 10.) Ain Jeem sells goods bearing those trademarks throughout the United States. (*Id.* ¶¶ 17–18.) The identities of Defendants are unknown, but they use online stores to sell goods that violate Ain Jeem's trademarks. (*Id.* ¶¶ 19, 21.) To do this, Defendants use seller profiles on internet stores and "will continue to register or acquire new [profiles] and domain names for the purpose of selling" these infringing goods. (*Id.* ¶¶ 21–25.)

---

[1] A defendant who defaults "admits the plaintiff's well-pleaded allegations of fact." *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

## II.   LEGAL STANDARD

A federal court injunction can only bind "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." Fed. R. Civ. Proc. 65(d)(2). This scope simply codifies the scope of the "common law powers of the district court." *ADT LLC v. NorthStar Alarm Servs., LLC*, 853 F.3d 1348, 1352 (11th Cir. 2017) (quoting *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945)). Although nominally three categories, "both [Rule 65] and the common-law doctrine contemplate two categories of nonparties potentially bound by an injunction." *Id.* (quoting *Nat'l Spirual Assembly of Bahá'ís of the U.S. under the Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of the Bahá'ís of the U.S.*, 628 F.3d 837, 848 (7th Cir. 2010) (Sykes, J.)). Those two categories consist of (1) those "parties who aid and abet the party bound by the injunction in carrying out prohibited acts" and (2) those parties "captured under the general rubric of 'privity.'" *Id.* (quotation omitted).

## III.   ANALYSIS

Ain Jeem seeks two injunctions against third-party "Internet marketplace websites" such as Amazon, eBay, and Etsy. The first requested injunction would require these website operators and administrators to "permanently remove any and all listings and

3

associated images of goods bearing counterfeits" on the online stores run by Defendants. (Doc. 49-4 at 3.) The second requested injunction would require all website operators or administrators "who [are] in possession, custody, or control of the Defendants' goods bearing" the Kareem Abdul-Jabbar trademark to "permanently cease fulfillment of and sequester those goods, and surrender the same" to Ain Jeem. (*Id.* at 3–4.) Ain Jeem advances two arguments for why the Court has the power to enjoin the website operators in these two ways. Ain Jeem's first argument addresses only the Court's power to issue the first injunction, and it fails to show how that injunction is within this Court's power. Its second argument attempts to provide support for both injunctions, but succeeds in providing support only for the second injunction, which requests that the website operators sequester and surrender Defendants' goods to Ain Jeem.

First, Ain Jeem argued in its motion for default judgment and permanent injunction that the injunction against the parties might have less of an effect without an injunction against the non-parties. (Doc. 49 at 13–14.) According to Ain Jeem, if the third parties do not remove the listings and images of the infringing content from their websites, the "Defendants will remain free to continue infringing Plaintiff's trademarks with impunity, will continue to benefit from the Internet traffic to those e-commerce stores and websites built through the unlawful use of the Kareem Abdul-Jabbar Marks, and will continue to

4

defraud the public by their illegal activities." (*Id.* at 14.) Ain Jeem might be right. But it fails to provide legal authority for the injunction it seeks. Neither of the two binding cases that Ain Jeem cites indicate that the federal district court can go beyond Rule 65's confines—and the historic confines that Rule 65 embodies—to enjoin nonparties. *See Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) (affirming a district court enjoining a party to the case); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) (same). Indeed, the injunctions in those cases were both limited to parties before the Court. And the list of district court cases that Ain Jeem cites are only persuasive authority which fail to indicate that this Court has the power Ain Jeem seeks to invoke. (Doc. 49 at 15 n.3 (citing eleven cases).)

Second, Ain Jeem argues in its supplemental briefing that Defendants and the online platforms were in privity. "'Privity' describes a relationship between one who is a party of record and a nonparty that is sufficiently close so a judgment for or against the party should bind or protect the nonparty." *Hart v. Yamaha-Parts Distributors, Inc.*, 787 F.2d 1468, 1472 (11th Cir. 1986). That relationship is sufficiently close when the nonparty is a "successor in interest" or is "otherwise 'legally identified' with the enjoined party." *ADT*, 853 F.3d at 1352 (quotation omitted).

5

Ain Jeem contends that Defendants are in privity with the nonparties regarding the requested injunction requiring the nonparties to remove listings and images from their websites because Defendants "absolute[ly] reli[ed]" on them. (Doc. 55 at 1–2.) In support, Ain Jeem provides a Department of Homeland Security report, proposed federal legislation, and a letter from the Intellectual Property Section of the American Bar Association. (*Id.* at 2–5.) But regardless of whether these documents could show that Defendants rely on the third-party internet marketplaces, Ain Jeem provides no legal authority from which the Court can conclude that reliance—even "absolute reliance"—creates privity between two entities or persons. Perhaps a party that relies on a nonparty for a business service would be incentivized to litigate aggressively such that the two entities would be identical in how they approached the case. *See Hart*, 787 F.2d at 1472 (noting that privity can exist where the "nonparty's interests were represented adequately by the party in the original suit"). But Ain Jeem does not make that argument and the Court doubts that the same incentives motivate Defendants and the nonparties in this case, especially given that Defendants never appeared in this action. Reliance, without something more, is not enough. Ain Jeem has not shown that the Court has the power to enjoin the nonparties as to how they manage their own websites.

6

But Ain Jeem's second requested injunction fares better. Ain Jeem asks for an injunction requiring any nonparties that are currently in possession of Defendants' trademark-infringing goods to "permanently cease fulfilment" of those goods and to sequester and deliver them to Ain Jeem. (Doc. 49-4 at 3–4.) Ain Jeem does not appear to seek an injunction against nonparty online platforms that might have themselves purchased goods from Defendants. Instead, it seeks to enjoin only those nonparty online platforms who are currently fulfilling orders on behalf of Defendants. (Doc. 49-4 at 3 (requesting the injunction require nonparties to "cease fulfilment" of those orders).) As such, to the extent that any nonparty online platform is currently delivering Defendants' goods, they are bailees of Defendants, the bailors here. And courts have long held that bailors and bailees are in privity. *See Union Ins. Soc. of Canton, Ltd. v. William Gluckin & Co.*, 353 F.2d 946, 953 (2d Cir. 1965) ("In tort law, the rule is well established that an adverse judgment in an action by a bailor against a third person for conversion or harm to chattels will preclude a subsequent suit by the bailee to the same extent as if the first suit had been by the bailee."); *cf. Axiom Worldwide, Inc. v. Excite Med. Corp.*, 591 F. App'x 767, 772 (11th Cir. 2014) (recounting a Supreme Court case that noted bailors and bailees can be in privity). Thus, to the extent that any nonparty online platform is currently delivering

Defendants' goods on behalf of Defendants, it is in privity with Defendants and can be bound by an injunction from this Court.

## IV.   CONCLUSION

The Court adopts-in-part the Magistrate Judge's Report and Recommendation on Ain Jeem's Motion for Default Judgment and Permanent Injunction. Because the Court can only enjoin parties before the Court and any nonparties in privity with them, the Court will not enjoin the nonparty online platforms regarding their management of their own websites. But because Defendants are in privity with any nonparties who are currently their bailees, the Court will enjoin those parties to cease fulfilment of any orders of Defendants' goods and to surrender those goods to Ain Jeem. Accordingly, the following is **ORDERED:**

1. The Magistrate Judge's Report and Recommendation that this Court grant Ain Jeem's Motion for Default Judgment is **ADOPTED**. The Court **GRANTS** Ain Jeem's Motion for Default Judgment, (Doc. 49), as to Defendants identified in the revised Schedule "A" attached to Ain Jeem's motion, who have not been voluntarily dismissed, (Doc. 49-1; Doc. 52).

2. The Magistrate Judge's Report and Recommendation that this Court grant Ain Jeem's Motion for Permanent Injunction is **ADOPTED-IN-PART**.

8

      The Court **GRANTS-IN-PART** Ain Jeem's Motion for Permanent Injunction, (Doc. 49), against Defendants identified in the revised Schedule "A" attached to Ain Jeem's motion, who have not been voluntarily dismissed, (Doc. 49-1; Doc. 52), and those nonparties in privity with them.

3. Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Clerk is directed to **ENTER** final default judgment in favor of Plaintiff, Ain Jeem, against each Defendant in the amount of $100,000.00 in statutory damages with interest to accrue at the legal rate under 28 U.S.C. § 1961.

4. The Clerk is directed to release the $10,000.000 bond posted by Ain Jeem, Inc.

5. Permanent Injunctive Relief:

    a. The Defendants and their officers, directors, employees, agents, subsidiaries, distributors, and all persons acting in concert and participation with the Defendants are hereby permanently restrained and enjoined from:

    (1) manufacturing or causing to be manufactured, importing, advertising, or promoting, distributing, selling or offering to sell counterfeit and infringing goods bearing Ain Jeem, Inc.'s

9

trademarks, or any confusingly similar trademarks identified in Paragraphs 28-29 of the Complaint (the "Kareem Abdul-Jabbar Marks") [ECF No. 1];

(2) using the Kareem Abdul-Jabbar Marks in connection with the sale of any unauthorized goods;

(3) using any logo, and/or layout which may be calculated to falsely advertise the services or products of the Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Ain Jeem, Inc.;

(4) falsely representing themselves as being connected with Ain Jeem, Inc., through sponsorship or association;

(5) engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of the Defendants are in any way endorsed by, approved by, and/or associated with Ain Jeem, Inc.;

(6) using any reproduction, counterfeit, copy, or colorable imitation of the Kareem Abdul-Jabbar Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants;

(7) affixing, applying, annexing, or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent goods offered for sale or sold by the Defendants as being those of Ain Jeem, Inc., or in any way endorsed by Ain Jeem, Inc.;

(8) otherwise unfairly competing with Ain Jeem, Inc.;

(9) using the Kareem Abdul-Jabbar Marks, or any confusingly similar trademarks on e-commerce marketplace sites, domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and from any other form of use of such terms which are visible to a computer user or serves to direct computer searches to e-commerce stores, websites, and/or Internet businesses registered, owned, or operated by the Defendants; and

(10) effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of

11

        circumventing or otherwise avoiding the prohibitions set forth above.

b. Upon the Ain Jeem, Inc's request, any Internet marketplace website operator or administrator who is in possession, custody, or control of Defendants' goods—as a bailee and not because it owns the item—bearing one or more of the Kareem Abdul-Jabbar Marks, including but not limited to Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform, DHgate.com, eBay Inc., SIA Joom, which operates the Joom.com platform, and ContextLogic, Inc., which operates the Wish.com platform, shall permanently cease fulfillment of and sequester those goods, and surrender the same to Ain Jeem, Inc.

c. All funds currently restrained or held on account for all Defendants by all financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms, including but not limited to, Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform ("AliExpress"), Zhejiang Ant Small and Micro Financial Services Group Co., Ltd. ("Ant Financial Services"), AliPay (China) Internet Technology Co. Ltd. and Alipay.com Co., Ltd.

(collectively, "Alipay"), Worldpay US, Inc. ("Worldpay"), Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc, SIA Joom, which operates the Joom.com platform ("Joom"), and PayPal, Inc. ("PayPal"), and their related companies and affiliates, are to be immediately (within 5 business days) transferred by the previously referred to financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms and by Defendant, to Ain Jeem, Inc. or Ain Jeem Inc.'s counsel in partial satisfaction of the monetary judgment entered herein against each Defendant. All financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms, including but not limited to AliExpress, Alipay, Dhgate, Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, eBay, Etsy, and/or Taobao, and their related companies and affiliates, shall provide to Ain Jeem, Inc. at the time the funds are released, a breakdown reflecting the (i) total funds restrained in this matter per Defendant; (ii) total chargebacks, refunds, and/or transaction reversals deducted from each Defendant's funds restrained

13

prior to release; and (iii) total funds released per Defendant to Ain Jeem, Inc.

6. The Court shall retain jurisdiction to enforce this judgment and permanent injunction.

7. The Clerk is directed to terminate any pending motions and deadlines and to close this case.

**ORDERED** in Tampa, Florida, on April 26, 2022.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge